UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Mindy McDonald,

        Plaintiff,

v.

JP Marketing Associates, LLC;
Better Business Bureau of Minnesota,
Inc.; and John Ponder,

        Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 06-4328 ADM/AJB

David W. Larson, Esq. and Pamela M. Harris, Esq., Martin & Squires, P.A., St. Paul, MN, on behalf of Plaintiff.

Thomas E. Marshall, Esq. and Katherine C. Bischoff, Esq., Jackson Lewis LLP, Minneapolis, MN, on behalf of Defendants.

## I. INTRODUCTION

On January 31, 2007, oral argument before the undersigned United States District Judge was heard on Defendants JP Marketing Associates, LLC ("JP Marketing"); Better Business Bureau ("BBB") of Minnesota, Inc.; and John Ponder's ("Ponder") (collectively "Defendants") Motion to Dismiss [Docket No. 6]. In their Motion, Defendants move to dismiss JP Marketing and Ponder from Plaintiff Mindy McDonald's ("Plaintiff" or "McDonald") Amended Complaint [Docket No. 4], as well as Counts I (Fair Labor Standards Act ("FLSA")), II (Minnesota Fair Labor Standards Act ("MN FLSA")), and III (Failure to Preserve Records).[1]  For the reasons set forth herein, Defendants' Motion to Dismiss is granted in part and denied in part.

---

[1] At oral argument, Plaintiff conceded that the "failure to preserve records" claim is no longer a part of this case. As a result, Count III is dismissed from the Amended Complaint. Plaintiff also clarified that her only claims against John Ponder are the FLSA claims.

## II. BACKGROUND[2]

McDonald is an Asian female. Am. Compl. ¶ 3. Ponder owns JP Marketing. Id. ¶ 7. In March 2003, McDonald was hired by JP Marketing to work as an inside sales person at the BBB of Northwest Indiana in South Bend, Indiana. Id. ¶¶ 11, 14. McDonald was paid on commission for selling BBB memberships to businesses, and was not paid overtime. Id. ¶¶ 11-13. After approximately one year of employment, McDonald told her supervisor, Bob Cote ("Cote"), a JP Marketing employee, that she was looking for other employment. Id. ¶ 14. Cote told McDonald that he "didn't want to lose her." Id. On March 22, 2004, Cote asked McDonald if she would consider relocating to the BBB in either Pittsburgh, Pennsylvania or St. Paul, Minnesota. Id. Cote promised McDonald that if she relocated to St. Paul, her income would increase from $80,000 annually to greater than $100,000 per year. Id. ¶ 15. Cote also promised McDonald she would be given ample opportunity to achieve and maintain a higher income level. Id. McDonald relied on Cote's promises in deciding to move to St. Paul. Id.

McDonald was promoted to Business Relations Manager of the BBB of Minnesota and received a contract from Cote on March 24, 2004. Id. ¶¶ 16-17; Bischoff Aff. [Docket No. 12] Ex. 4. The contract included McDonald's commission structure, sales goals, managerial responsibilities, and reporting requirements. Am. Compl. ¶ 16; Bischoff Aff. Ex. 4; McDonald Aff. [Docket No. 20] Ex. D. McDonald was required to (1) keep close daily communications with Doug Wallick ("Wallick"), Director of Membership for JP Marketing, (2) report daily attendance of employees to JP Marketing, and (3) report daily production to JP Marketing. Am.

---

[2] In considering Defendants' Motion to Dismiss, the Court takes the facts alleged in Plaintiff's Amended Complaint to be true. See Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994).

Compl. ¶ 16; Bischoff Aff. Ex. 4; McDonald Aff. Ex. D.  McDonald signed and returned the contract.  Am. Compl. ¶ 16.  The contract was also signed by Wallick and Jane Driggs ("Driggs"), CEO and President of the BBB of Minnesota.  Bischoff Aff. Ex. 4; McDonald Aff. Ex. D.  McDonald never met with or spoke to any of the Minnesota BBB employees before she moved to St. Paul to begin her new position.  Am. Compl. ¶ 17.

McDonald avers that after moving to St. Paul, she performed her duties in an exemplary fashion, she exceeded her personal goals, and the office she supervised performed well as compared to other BBB offices of comparable size across the nation.  Id. ¶¶ 18-19.  McDonald earned an average of $10,186 per month for the quarterly period of May, June, and July 2004, annualized to $122,232.  Id. ¶ 18.

On August 17, 2004, McDonald learned in a conference call with Wallick and Cote that she was being demoted to Assistant Business Relations Director effective September 1, 2004.  Id. ¶¶ 3, 22-23.  The next day, McDonald spoke with Driggs, who told McDonald that Ponder had told her about McDonald's demotion on an August 10-11 visit to the office.  Id. ¶ 22.  Driggs told McDonald that she had been pleased with McDonald's performance, and was shocked to learn of the demotion.  Id.  McDonald was replaced by John Soltys, a white male who had been fired from his employment at the St. Louis BBB.  Id. ¶¶ 3, 23.  In her new position, McDonald no longer had supervisory responsibilities and compensation opportunities dramatically decreased.  Id. ¶ 23; Bischoff Aff. Ex. 5.  After McDonald was replaced by Soltys, the sales volume for the St. Paul office declined.  Am. Compl. ¶ 29.  In September 2004, McDonald hired an attorney "who commenced communications with the defendants in an effort to better plaintiff's employment position.  Those efforts were unsuccessful."  Id. ¶ 28.

McDonald resigned from her employment effective November 1, 2004. Id. ¶ 30.

In January and April 2005, McDonald filed charges of discrimination with the EEOC against BBB and JP Marketing. Id. ¶ 3; Bischoff Aff. Exs. 2, 3. In November 2006, McDonald received Notice of Right to Sue letters from the EEOC regarding both BBB and JP Marketing. Am. Compl. ¶ 3. McDonald commenced this lawsuit on October 27, 2006.

### III. DISCUSSION

**A.      Motion to Dismiss Standard**

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm, 15 F.3d at 112; Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993). Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party. Ossman, 825 F. Supp. at 880. "A motion to dismiss should be granted as a practical matter . . . only in the unusual case in which the plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995).

**B.      Motion to Dismiss v. Summary Judgment**

Although Defendants' Motion is styled as a Motion to Dismiss, both parties submitted affidavits and exhibits with their memoranda that proffered matters outside the pleadings. At oral argument, the Court asked the parties to determine whether they preferred the instant Motion to be considered as a dismissal motion or a motion for summary judgment, and advise

CASE 0:06-cv-04328-ADM-AJB   Document 26   Filed 04/13/07   Page 5 of 16

the Court. Plaintiff's counsel asks that the Motion be considered as a dismissal motion because discovery may yield evidence relevant to summary judgment. Plaintiff's Letter [Docket No. 23]. Defendants' counsel consents to converting the Motion to one for summary judgment. Defendants' Letter [Docket No. 25].

Ordinarily, if a district court relies on "matters outside the pleadings" in considering a motion to dismiss, the motion to dismiss is converted to one for summary judgment. BJC Health Sys. v. Columbia Cas. Co., 348 F.3d 685, 687-88 (8th Cir. 2003). A court has "complete discretion" in determining whether to accept materials beyond the pleadings, but should not do so if the non-moving party has not yet had an opportunity to discover facts or evidence to support its allegations. Stahl v. U.S. Dep't of Agric., 327 F.3d 697, 701 (8th Cir. 2003); BJC Health Sys., 348 F.3d at 687-88. However, "[i]n a case involving a contract, the court may examine the contract documents in deciding a motion to dismiss." Stahl, 327 F.3d at 700. The court may also consider public records and matters that are "necessarily embraced by the pleadings." Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999). In general, "[m]ost courts view matters outside the pleading[s] as including any written or oral evidence in support of or in opposition to the pleading[s] that provides some substantiation for and does not merely reiterate what is said in the pleadings." BJC Health Sys., 348 F.3d at 687.

After consideration of the parties' positions, the Motion will be reviewed as a Motion to Dismiss. Although the parties have submitted material in support of their respective positions which would be helpful in determining the issues at hand, Plaintiff is entitled to conduct discovery to obtain evidence to support her arguments before this Court considers a summary judgment motion. Accordingly, matters not "necessarily embraced by the pleadings" will not be

considered here.

Defendants submitted three affidavits appended to the Memorandum of Law in Support of Their Motion to Dismiss [Docket No. 11]. The affidavits of John Ponder [Docket No. 14] and Jane Driggs [Docket No. 13] contain factual averments that constitute matters outside the pleadings, and consequently, are not considered here. Both the Ponder and Driggs Affidavits attach an Exhibit A that is a Consulting Agreement between John Ponder and JP Marketing, and the BBB of Minnesota and North Dakota. Because this contract is not directly referenced in the Amended Complaint, and serves as evidence in support of Defendants' position in opposition to the Amended Complaint, it also will not be considered in the Motion to Dismiss analysis. Attached to the Affidavit of Katherine C. Bischoff are five exhibits. Exhibit 1 is a copy of correspondence. Again, this document constitutes matters outside the pleadings and will not be considered. Exhibits 2 and 3 are copies of the Charges of Discrimination filed by McDonald, and as public records, they will be considered. Exhibit 4 is a copy of the Compensation Plan for the Business Relations Manager position and Exhibit 5 is a copy of the compensation levels and job description for the Assistant Director of Business Relations position. These documents are referenced in the Amended Complaint and embraced by the pleadings, and are appropriately before the Court. See Am. Compl. ¶¶ 16, 23.

In support of her Memorandum in Opposition to Defendants' Motion to Dismiss [Docket No. 18], Plaintiff attaches the Affidavit of Pam Harris [Docket No. 19] and the Affidavit of Mindy McDonald. Harris's Affidavit contains factual averments in support of the Amended Complaint, and will not be considered here. McDonald's Affidavit contains factual averments that will not be considered by the Court, and also attaches 20 exhibits. The Court will consider

only Exhibit D, a copy of the Compensation Plan for the Business Relations Manager position, as the rest of the exhibits attached to McDonald's Affidavit constitute matters outside the pleadings.

**C.      McDonald's Employer**

Defendants argue that BBB of Minnesota was McDonald's employer. Defendants argue that Plaintiff can not maintain many of her claims against JP Marketing and Ponder because they were consultants to BBB, not her employer.

**1.      FLSA**

The Fair Labor Standards Act defines employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). Employee is defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). Employ is defined as "to suffer or permit to work."[3] 29 U.S.C. § 203(g). The "employment" terms in the FLSA are to be interpreted broadly. See Hodgson v. Taylor, 439 F.2d 288, 290 (8th Cir. 1971) (citing United States v. Rosenwasser, 323 U.S. 360, 363 n.3 (1945)). To determine whether an individual or entity is an employer, courts analyze the "economic reality" of the relationship between the parties. Blair v. Wills, 420 F.3d 823, 829 (8th Cir. 2005) (citing Goldberg v. Whitaker House Coop., Inc., 366 U.S. 28, 33 (1961)). Factors to consider include:

> (1) the degree of control over the manner in which the work is performed; (2) the worker's opportunity for profit or loss depending on his managerial skill; (3) the worker's investment in equipment or materials, or his employment of helpers; (4) whether the service rendered requires a special skill; (5) the degree or permanence of the working relationship; and (6) whether the service rendered is an integral part of the

---

[3] The MN FLSA defines "employ," "employer," and "employee" similarly. Minn. Stat. § 177.23, subds. 5-7. The definition of "employee" contains nineteen exceptions, but none of those exceptions are relevant here. See Minn. Stat. § 177.23, subd. 7.

employer's business."[4]

Catani v. Chiodi, Civ. No. 00-1559 DWF/RLE, 2001 WL 920025, at *3 (D. Minn. Aug. 13, 2001) (citing Donovan v. DialAmerica Mktg, Inc., 757 F.2d 1376, 1382 (3d Cir. 1985)). "[I]t is the totality of the circumstances, and not any one factor, which determines whether a worker is the employee of a particular alleged employer." Catani, 2001 WL 920025, at *3; see also Reich v. ConAgra, Inc., 987 F.2d 1357, 1361 (8th Cir. 1993) (stating that the existence of an employer-employee relationship "depends upon the circumstances of the whole activity"). To determine:

> Whether a 'joint employer' relationship exists under the 'economic realities' test, courts tend to narrow the inquiry and ask whether the alleged employer: (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records.

Catani, 2001 WL 920025, at *6 (citation omitted).

In her Amended Complaint, Plaintiff alleges JP Marketing hired her initially to work at the BBB of Northwest Indiana, facilitated her relocation to BBB of Minnesota, and demoted her. Am. Compl. ¶¶ 14, 22. She also alleges that JP Marketing employee Cote was her supervisor in Indiana, and she was required to report daily to JP Marketing employee Wallick in Minnesota. Id. ¶¶ 14, 16. Plaintiff further alleges that it was JP Marketing, via Cote, that made her promises about her opportunity for increased compensation in Minnesota, and that provided her with a contract detailing her compensation plan. Id. ¶¶ 15, 16. The contract was signed by McDonald, Wallick, and Driggs. Bischoff Aff. Ex. 4; McDonald Aff. Ex. D. In considering the totality of

---

[4] The same test is used to determine the existence of an employment relationship under the MN FLSA. See Matter of Kokesch, 411 N.W.2d 559, 562 (Minn. Ct. App. 1987). Consequently, the above analysis and conclusion regarding McDonald's federal FLSA claim also applies to her MN FLSA claim.

the circumstances, Plaintiff has made sufficient allegations to support a finding that JP Marketing had the power to hire and fire her, supervise her, and determine her compensation, and thus JP Marketing was a joint employer of Plaintiff, along with the BBB of Minnesota. At this stage of the proceedings, Plaintiff's factual allegations must be taken as true, and are sufficient in light of the factors articulated above to support a finding that JP Marketing was Plaintiff's employer for purposes of her FLSA claim.

However, Plaintiff's allegations are insufficient to establish that John Ponder was Plaintiff's employer, within the meaning of the FLSA. Although Plaintiff alleges that Ponder owns JP Marketing, there are no specific allegations in Plaintiff's Amended Complaint that John Ponder directly hired Plaintiff, supervised Plaintiff, determined Plaintiff's compensation, or maintained Plaintiff's employment records. Plaintiff's only allegation specific to John Ponder is that Ponder told Driggs that McDonald would be demoted. Am. Compl. ¶ 22. However, this averment, standing alone, is insufficient to support a finding that Ponder was McDonald's employer within the meaning of the FLSA. Accordingly, McDonald's FLSA claims against JP Marketing remain, but McDonald's FLSA claims are dismissed as to John Ponder. Because Plaintiff's only claims against John Ponder are her FLSA claims, and because Plaintiff's FLSA claims are dismissed as to John Ponder, John Ponder is dismissed as a defendant from this lawsuit.

### 2. Title VII

42 U.S.C. § 2000e(b) states: "The term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . ." "Employer" is to

be defined liberally.  Baker v. Stuart Broad. Co., 560 F.2d 389, 391 (8th Cir. 1977).  Separate employer entities can be treated as one to reach the fifteen-or-more-employees requirement in 42 U.S.C. § 2000e(b) if they "are of such coagulation that they must be considered one."  Id. Factors to consider to determine whether consolidation of separate entities is proper are "(1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership or financial control."  Artis v. Francis Howell N. Band Booster Ass'n, Inc., 161 F.3d 1178, 1184 (8th Cir. 1998) (citing Baker, 560 F.2d at 392).  The Eighth Circuit considers these four factors regardless of whether the Plaintiff's theory of consolidation is "single entity" or "joint employer."[5]  Scheidecker, 122 F. Supp. 2d at 1038.  "The single entity analysis is appropriate when separate corporations are not what they appear to be, that in truth they are but divisions or departments of a single enterprise."  Id. at 1037 (citation omitted).  "A finding of joint employer is proper where one company has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer."  Id. at 1038.

Defendants aver that JP Marketing employs only one person—John Ponder—and therefore JP Marketing can not be an employer under Title VII unless it is consolidated with the BBB of Minnesota.  In considering whether JP Marketing and the BBB of Minnesota should be consolidated for purposes of Title VII, the first and third factors weigh in favor of consolidation, as it appears that JP Marketing has at least some supervision and control over BBB employees, some ability to participate in or control hiring and firing, and some ability to determine

---

[5] Other circuits use different standards for these two theories.  Scheidecker v. Arvig Enters., Inc., 122 F. Supp. 2d 1031, 1038 n.4 (D. Minn. 2000).

compensation. The second and fourth factors do not weigh in favor of consolidation because there are no allegations of common management, or common ownership or financial control. However, factors 2 and 4 speak more to the "single entity" analysis, and would not necessarily be present when two employers are alleged to be a "joint enterprise." Here, at this early stage of the proceedings, Plaintiff's averments of JP Marketing's control and supervision of BBB employees are sufficient to consider JP Marketing and the BBB of Minnesota "joint employers" and to consolidate them for Title VII purposes. Therefore, Plaintiff's Title VII claim against JP Marketing survives dismissal.

### 3.    Minnesota Human Rights Act

The Minnesota Human Rights Act ("MHRA") defines "employer" as "a person who has one or more employees." Minn. Stat. § 363A.03, subd. 16. An "employee" is defined as "an individual who is employed by an employer and who resides or works in this state." Minn. Stat. § 363A.03, subd. 15. Minn. Stat. § 363A.08 states that "it is an unfair employment practice for an employer . . . to . . . discriminate against a person with respect to hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment" because of race or sex. Minn. Stat. § 363A.08, subd. 2(c).

> In determining the existence of an employment relationship under the MHRA, Minnesota courts consider five factors: (1) the right to control the means and the manner of performance, (2) the mode of payment, (3) the furnishing of materials or tools, (4) the control of the premises where the work is done, and (5) the employer right to discharge.

Midwest Sports Mktg., Inc. v. Hillerich & Bradsby of Canada, Ltd., 552 N.W.2d 254, 260 (Minn. Ct. App. 1996). "The most important factor 'is the right, not just the exercise, of the employer to control the details of the work.'" Id. (citation omitted). In addition, "Minnesota courts have recognized that principles developed in federal Title VII cases are instructive and

may be applied when interpreting the MHRA." Johns v. Harborage I, Ltd., 585 N.W.2d 853, 860 (Minn. Ct. App. 1998).

Plaintiff has made sufficient allegations to support a finding that JP Marketing had the power to hire and fire her, supervise her, and determine her compensation. In consideration of the above-referenced factors, and as previously discussed with respect to Plaintiff's FLSA and Title VII claims, McDonald has sufficiently alleged that JP Marketing was her employer to allow her MHRA claims against JP Marketing to remain.

**D.     Timeliness of FLSA Claims**

McDonald's claims for overtime pay under both the federal and Minnesota FLSA are circumscribed by a two-tiered statute of limitations period: two years for ordinary violations of the Act, and three years for willful violations. 29 U.S.C. § 255(a); Minn. Stat. § 541.07, subd. 5; see also McLaughlin v. Richland Shoe Co., 486 U.S. 128, 132 (1988). In her Amended Complaint, McDonald alleges she resigned her employment effective November 1, 2004. Am. Compl. ¶ 30. McDonald filed her initial Complaint in the instant litigation on October 27, 2006. Defendants argue that the timeliness of McDonald's claims are assessed by reference to her last day of work, October 18, 2004. Defendants further argue that McDonald has not pled facts in her Amended Complaint to support a finding of a willful or knowing violation of the FLSA. Plaintiff responds that her cause of action accrued on the last day of her employment, which concluded with the end of the pay period on November 1, 2004. Plaintiff further argues that although not specifically averred in her Amended Complaint, Defendants' actions were willful.

29 C.F.R. § 790.21(b) states that "a cause of action under the Fair Labor Standards Act for . . . unpaid overtime compensation . . . 'accrues' when the employer fails to pay the required

compensation for any workweek at the regular pay day for the period in which the workweek ends." See also Biggs v. Wilson, 1 F.3d 1537, 1540 (9th Cir. 1993) (citing cases, including Mid-Continent Petroleum Corp. v. Keen, 157 F.2d 310, 316 (8th Cir. 1946)). Accordingly, Plaintiff's cause of action for overtime pay accrued as of her last pay date, November 1, 2004. Therefore, Plaintiff has sufficiently alleged a timely claim for failure to pay overtime under the federal and Minnesota FLSA within the two year statute of limitations.[6]

### E.     Promissory Estoppel

In her Amended Complaint, Plaintiff alleges that JP Marketing made a clear and definite promise to her that her income would exceed $100,000 per year and that she would be given ample opportunity to achieve and maintain this higher income level. Am. Compl. ¶ 77. Plaintiff further alleges that she relied on JP Marketing's promise, and the promise should be enforced to prevent injustice. Id. ¶¶ 78-79. Defendants argue that JP Marketing's alleged promises were not clear and definite, and that McDonald did not rely to her detriment. Plaintiff responds that JP Marketing partly performed its promises because she was being compensated in Minnesota at a rate of over $100,000 per year; however, she was not given a reasonable opportunity to perform.

Promissory estoppel, as defined in the Restatement (Second) of Contracts, is: "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee . . . and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." Restatement (Second) of Contracts § 90(1). In determining promissory estoppel, Minnesota courts analyze whether: (1) there was a "clear and

---

[6] Because Plaintiff's claim is timely under the two year statute of limitations for ordinary violations of the FLSA, there is no need to address the parties' arguments regarding the three year willfulness provision.

definite promise," (2) the promisor intended to induce reliance, and the promisee relied, and (3) the promise must be enforced to prevent an injustice. Ruud v. Great Plains Supply, Inc., 526 N.W.2d 369, 372 (Minn. 1995). Whether the statements made are "clear and definite" can be determined as a matter of law. Martens v. Minn. Mining & Mfg. Co., 616 N.W.2d 732, 746 (Minn. 2000).

The first part of JP Marketing's alleged promise is that McDonald's "income would exceed $100,000 per year." In her Amended Complaint, McDonald avers that she earned an average of $10,186 per month for the quarterly period of May, June, and July 2004, annualized to $122,232. Am. Compl. ¶ 18. McDonald acknowledges that she was compensated at a rate of greater than $100,000 per year, and that JP Marketing thus "partly performed" on its promises. Pl.'s Opp'n Mem. [Docket No. 18] at 17. Thus, the first part of JP Marketing's alleged promise does not appear to form the basis of McDonald's promissory estoppel claim. Rather, McDonald's promissory estoppel claim is focused on the second half of JP Marketing's "promise"—that McDonald "would be given ample opportunity to achieve and maintain this higher income level." Id. ¶ 77.

McDonald's promissory estoppel claim fails because JP Marketing's alleged promise is not "clear and definite." See Ruud, 526 N.W.2d at 371-72 (holding that employer's statements that "Good employees are taken care of" were policy statements rather than an offer of permanent employment, and not sufficiently clear and definite to support a claim for promissory estoppel). "Ample opportunity" is a highly subjective term and does not set a clear and definite standard to gauge whether a promise has been made. McDonald worked as Business Relations Manager of the BBB of Minnesota for approximately five months before she was demoted to

Assistant Relations Business Director effective September 1, 2004. She continued in her new position until resigning effective November 1, 2004. Whether McDonald was given "ample opportunity" to achieve an income greater than $100,000 is vague and not susceptible of any particular meaning. Therefore, McDonald's promissory estoppel claim must be dismissed.[7]

Furthermore, McDonald argues that she was not given a reasonable opportunity to perform her job and obtain the benefits of JP Marketing's promise. McDonald relies on Grouse v. Group Health Plan, Inc., 306 N.W.2d 114 (Minn. 1981) and Gorham v. Benson Optical, 539 N.W.2d 798 (Minn. Ct. App. 1995). In Grouse, after the plaintiff accepted a job as a pharmacist at Group Health, the plaintiff gave his current employer, Richter Drug, two week's notice that he would be leaving his employment. 306 N.W.2d at 115. When the plaintiff later called Group Health to report that he was ready to begin work, the plaintiff was informed that Group Health had hired someone else and the plaintiff no longer had a job. Id. at 116. The court held that the plaintiff "had a right to assume he would be given a good faith opportunity to perform his duties to the satisfaction of [Group Health] once he was on the job," and that the doctrine of promissory estoppel entitled the plaintiff to recover. Id. at 115-16.

In Gorham, the plaintiff resigned his employment and accepted a new job with Benson Optical, only to be told on his first day of work that the company no longer wished to employ him. 539 N.W.2d at 799-800. The court relied on Grouse in finding that the plaintiff had a viable promissory estoppel claim. Id. at 801-02. In comparing the plaintiffs in Gorham and Grouse, the Gorham court stated "[b]oth men relied to their detriment on the promise of a new

---

[7] Because JP Marketing has not made a clear and definite promise to McDonald, it is not necessary to analyze the remaining elements of McDonald's promissory estoppel claim.

job, only to discover that the opportunity had disintegrated before they ever actually started working.  Neither man had a 'good faith opportunity to perform his duties.'" Id. at 801 (citing Grouse, 306 N.W.2d at 116).

Grouse and Gorham are inapposite to McDonald's case because McDonald worked for the BBB of Minnesota for approximately five months before she was demoted, and then worked for an additional two months before she resigned her position.  Unlike Grouse and Gorham, who worked no days and one day, respectively, for their new employers, McDonald did have "a reasonable opportunity to perform."

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants JP Marketing Associates, LLC; Better Business Bureau of Minnesota, Inc.; and John Ponder's Motion to Dismiss [Docket No. 6] is **GRANTED IN PART AND DENIED IN PART**.  Counts III and IX are **DISMISSED**.  John Ponder is **DISMISSED** as a Defendant.

BY THE COURT:

      s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  April 13, 2007.